UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

───────────────────────────────

| | | |
|---|---|---|
| IN RE: PHILADELPHIA ENTERTAINMENT | : | |
| AND DEVELOPMENT PARTNERS, LP, | : | Bankruptcy No. 14-12482 |
| Debtor | : | |

───────────────────────────────

| | | |
|---|---|---|
| | : | |
| IN RE: PHILADELPHIA ENTERTAINMENT | : | |
| AND DEVELOPMENT PARTNERS, LP, | : | |
| *d/b/a* FOXWOODS CASINO PHILADELPHIA, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Civil Action No. 2:20-cv-00295 |
| | : | Adversary No. 14-00255 |
| COMMONWEALTH OF PENNSYLVANIA | : | |
| DEPARTMENT OF REVENUE, and | : | |
| COMMONWEALTH OF PENNSYLVANIA, | : | |
| Defendants | : | |

───────────────────────────────

## O P I N I O N
**Appeal of Bankruptcy Court's Order dated December 31, 2019- Affirmed**

**Joseph F. Leeson, Jr.**                                                    **September 30, 2020**
**United States District Judge**

## I.     INTRODUCTION

Persil Mangeur LLC, in its capacity as the trustee of the Liquidation Trust for the estate

of the debtor Philadelphia Entertainment and Development Partners, LP d/b/a Foxwoods Casino

Philadelphia ("PEDP"), the plaintiff in the above-captioned adversary action, appeals from the

order granting the Commonwealth Defendants' Motion to Dismiss Adversary Complaint or, in

the Alternative, to Abstain, entered by the United States Bankruptcy Court for the Eastern

District of Pennsylvania on December 31, 2019.  After de novo review, the Bankruptcy Court's

decision is affirmed.

## II.     BACKGROUND

In a 2018 opinion, the Third Circuit Court of Appeals described the background[1] of this

case as follows:

> We trace this case to 2006 when the Pennsylvania Gaming Control Board (the
> "Board") awarded a slot machine license to PEDP, which paid a $50 million fee to
> the Commonwealth for the license. The Board, however, eventually revoked the
> license when PEDP failed to meet certain of its requirements for its maintenance.
> [It did not return any part of the $50 million license fee.]  PEDP unsuccessfully
> appealed from the revocation order to the Pennsylvania Commonwealth Court,
> following which the Supreme Court of Pennsylvania denied PEDP's application to
> review that decision. After the Pennsylvania courts upheld the revocation, thereby
> exhausting PEDP's remedies through state procedures to challenge the revocation,
> it filed a petition in bankruptcy. During the bankruptcy proceedings, it brought an
> adversary action against the Commonwealth alleging that the license revocation
> should be avoided because it was a fraudulent transfer[2] under §§ 544 and 548 of
> the Bankruptcy Code and under Pennsylvania law. Citing the *Rooker-
> Feldman* doctrine, the Bankruptcy Court concluded that it lacked subject matter
> jurisdiction over the fraudulent transfer claims in light of the proceedings in the
> state courts which had upheld the revocation order. By that time Persil had been
> appointed Trustee, and it appealed to the District Court which affirmed the
> Bankruptcy Court order. Persil then appealed to this Court. We will reverse because
> the Bankruptcy Court erred when it held that the *Rooker-Feldman* doctrine barred
> its review of the fraudulent transfer claims. We are satisfied that in a review of those
> claims the Bankruptcy Court did not need to review or reject the Commonwealth
> Court's judgment. We, however, do not reach a conclusion on the question of
> whether any of PEDP's fraudulent transfer claims are meritorious, so our opinion
> should not be overread as we only address the *Rooker-Feldman* issue.

*Phila. Entm't & Dev. Partners, LP v. Dep't of Revenue (In re Phila. Entm't & Dev. Partners,*

*LP)*, 879 F.3d 492, 494-95 (3d Cir. 2018) ("PEDP IV").  The matter was remanded to this Court,

which at its option, remanded the matter to the Bankruptcy Court for further proceedings to

address:

---

[1]      Additional factual background was provided by the Third Circuit Court of Appeals, as
well as in prior opinions of this Court, the Bankruptcy Court, and the state courts, and will not be
repeated here.  *See, e.g. In re Phila. Entm't & Dev. Partners, LP, d/b/a Foxwood Casinos
Philadelphia*, 569 B.R. 394, 396 (E.D. Pa. 2017) ("PEDP III").

[2]      It was clarified for the first time in the Circuit Court that the transfer PEDP seeks to avoid
is the revocation of the License without receiving value in return.

(1) whether claim or issue preclusion bars judicial review of the Trustee's claim that the license revocation was a constructively fraudulent transfer under § 548(a)(1)(B) or § 544(b) and the PUFTA;[3] and if not (2) whether the Trustee has stated a claim that the license revocation constitutes a fraudulent transfer under § 548(a)(1)(B) or § 544(b) and the PUFTA; and (3) whether the Eleventh Amendment bars judicial review of the Trustee's claim that the license revocation was a constructively fraudulent transfer under § 548(a)(1)(B) or § 544(b) and the PUFTA.

*Id.* at 504; *PEDP III*, No.: 16-cv-01992, Order dated April 19, 2019, at ECF No. 29.  On remand,

the Bankruptcy Court concluded:

(1) the Plaintiff's Fraudulent Transfer Claims are not barred by claim or issue preclusion; (2) the Plaintiff's Fraudulent Transfer Claims are barred by sovereign immunity, and (3) even if sovereign immunity were inapplicable to the Fraudulent Transfer Claims, the Plaintiff has failed to state a claim against the Defendants under §§548(a)(1)(B), 544, and 550 of the Bankruptcy Code and the PUFTA because the License did not constitute the property or an asset of the Debtor under applicable Pennsylvania state law.

*Phila. Entm't & Dev. Partners, LP v. Pa. (In re Phila. Entm't & Dev. Partners, L.P.)*, 611 B.R.

51, 57 (Bankr. E.D. Pa. 2019) ("PEDP V").  That decision is the subject of the instant appeal.

The Trustee asserts that the Bankruptcy Court, relying on definitions in the Gaming Act[4]

rather than in the PUFTA, erred in holding that the License did not constitute property, an

interest in property, or an asset of PEDP for purposes of the fraudulent transfer claims.  This

determination was essential in the Bankruptcy Court's conclusions that the fraudulent transfer

claims are barred by sovereign immunity and that PEDP failed to state a claim for fraudulent

transfer under the Bankruptcy Act and the PUFTA.  Because this Court, after de novo review,

holds that the License was not the property of PEDP, the Bankruptcy Court's decision is

affirmed.

---

[3]      Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa.C.S. §§ 5104-5105 ("PUFTA")
[4]      Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. §§ 1101-1904 ("Gaming Act")

### III.  STANDARD OF REVIEW

On appeal, a district court reviews a Bankruptcy Court's findings of fact applying a "clearly erroneous" standard of review. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999).  A district court reviews the Bankruptcy Court's legal determinations de novo.[5]  *See Sovereign Bank v. Schwab*, 414 F.3d 450, 452 (3d Cir. 2005).

### IV.  ANALYSIS

This case essentially revolves around whether PEDP had a property interest in the License.  The Bankruptcy Court concluded that it did not.  Consequently, the court determined that sovereign immunity barred the fraudulent transfer claims and PEDP failed to state a claim.  For the reasons set forth below, because the Gaming Act makes clear that the issuance of the License was a revocable privilege, *see* 4 Pa.C.S. § 1311(d), this Court finds after de novo review that the License was not the property of PEDP and the Adversary Complaint was properly dismissed.

#### A.  The License was not the property of PEDP.

PEDP asserted fraudulent transfer claims against the Commonwealth based on the revocation of the License.  These claims were brought under § 548(a)(1)(B) of the Bankruptcy Code and under the PUFTA, by virtue of § 544 of the Bankruptcy Code.  A threshold requirement for each of the claims is that the License was the property of PEDP.  *See* 11 U.S.C. § 548(a)(1) (allowing the trustee to avoid any transfer "of an interest of the debtor in property. . ."); 12 Pa.C.S. §§ 5104-5105 (providing for voidable transfers); 12 Pa.C.S. § 5101 (defining

---

[5]      The Trustee asserts that the issues in this appeal involve disputes concerning the legal conclusions reached by the Bankruptcy Court and that de novo review is required.

"transfers" as "[e]very mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset;" and "asset" as "[p]roperty of a debtor"). The Bankruptcy Code does not define "property" or an interest in property. "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner v. United States*, 440 U.S. 48, 54 (1979).

###### 1.    The Bankruptcy Court's Opinion and issues on appeal

In looking to state law, the Bankruptcy Court found that the Gaming Act, which governs, *inter alia*, the creation, issuance, maintenance, and revocation of slot machine licenses, "is the appropriate source of Pennsylvania state law for determining the Debtor's interest in the License." *See PEDP V*, 611 B.R. at 70. The court noted that § 1102, which sets forth the Pennsylvania General Assembly's stated legislative intent in enacting the Gaming Act, states:

> Participation in limited gaming authorized under this part by any licensee, permittee, registrant or certificate holder shall be deemed a privilege, conditioned upon the proper and continued qualification of the licensee, permittee, registrant or certificate holder and upon the discharge of the affirmative responsibility of each licensee, permittee, registrant and certificate holder to provide the regulatory and investigatory authorities of the Commonwealth with assistance and information necessary to assure that the policies declared by this part are achieved.

4 Pa.C.S. §1102(7). The Bankruptcy Court "view[ed] this as an unequivocal statement that the Pennsylvania legislature intended that the License constitutes a revocable privilege." *PEDP V*, 611 B.R. at 70 (citing *In re Williams*, 2014 Bankr. LEXIS 330, at *9 (Bankr. D.N.J. Jan. 24, 2014) (explaining that the starting point to discern legislative intent is the existing statutory text)). The court found that the legislative intent that the License is a revocable privilege is also supported by other provisions of the Gaming Act. *See id.* (citing 4 Pa.C.S. §§ 1311(d), 1327-1328; 58 Pa. Code § 421a.1(a)). It further determined that the "Pennsylvania legislature included express statutory language in §1327 of the Gaming Act that not only barred the sale, transfers or

assignment of the License, but also prevented the formation of a property interest by precluding any entitlement to a license." *PEDP V*, 611 B.R. at 75-76. The Bankruptcy Court concluded that "the Debtor's interest in the License was not an 'interest of the debtor in property' under §548(a) of the Bankruptcy Code." *Id.* at 70-71.

The Bankruptcy Court considered PEDP's argument that the PUFTA, pursuant to which PEDP seeks to avoid the transfer, rather than the Gaming Act, should be used to determine whether the License was property. *See id.* at 71-72. But the court rejected the suggestion that the legislative history of the PUFTA trumps the statutory provisions of the Gaming Act. *See id.* (explaining that PEDP argued "that the legislative history of the PUFTA shows that the definition of the term 'property' under that statute was intended to be construed broadly" and that government licenses that contribute to the value of the holder should be deemed "property" regardless of whether they are transferable or are deemed property for other purposes (citing 12 Pa.C.S. § 5101, Committee Cmt. — 1993, No. 9)). It also rejected PEDP's argument that "there is no irreconcilable conflict between the PUFTA's articulation of property for fraudulent transfer purposes and the Gaming Act's provisions with respect to the License," reasoning that the Gaming Act "addresses the nature of a gaming license as a revocable privilege that did not create an entitlement in any party." *See id.* The court reasoned that "the PUFTA does not 'clearly' address gaming licenses specifically, but rather addresses government-issued licenses 'generally,' [and that] the general nature of the PUFTA's commentary, in the face of a specific statute related to gaming licenses, makes it less than 'clear' that the License is property under the PUFTA." *See id.* The Bankruptcy Court further commented that the PUFTA predates the amendments to the Gaming Act that authorized the issuance of slot machine licenses and, therefore, PUFTA's "reference to government-issued licenses clearly did not include slot

machine licenses such as the License issued to the Debtor." *See id.*  Consequently, the court

concluded that "the specific provisions of the Gaming Act providing that the License is a

revocable privilege and not intended to create an entitlement for the benefit of any person

supersede the general provisions of the PUFTA's legislative history, and support the conclusion

that the Debtor did not hold a property or ownership interest in the License for purposes of either

§544 of the Bankruptcy Code or §§5104 and/or 5105 of the PUFTA."  *Id.* at 73.

   In this appeal, PEDP reasserts it arguments that the PUFTA's legislative history

establishes the License is property and that the rules of statutory construction provide that the

definition of property in the PUFTA, as opposed to the Gaming Act, should control.

Additionally, PEDP argues that under the plain language of the PUFTA the License was

"property."  PEDP further contends that the Bankruptcy Court erred in finding that the PUFTA

and the Gaming Act were irreconcilable and that, regardless, the PUFTA is the "special statute"

as to the question of whether the License constitutes "property."

   **2.**     ***The License is not property.***

   "In determining the meaning of a statutory provision, '[the courts] look first to its

language, giving the words used their ordinary meaning.'"  *Artis v. District of Columbia*, 138 S.

Ct. 594, 603 (2018) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)).  "Generally,

where the text of a statute is unambiguous, the statute should be enforced as written and '[o]nly

the most extraordinary showing of contrary intentions in the legislative history will justify a

departure from that language.'"  *In re Phila. Newspapers, LLC*, 599 F.3d 298, 314 (3d Cir. 2010)

(quoting *United States v. Albertini*, 472 U.S. 675, 680 (1985)).

   Contrary to PEDP's claim, the License is not property under the plain language of the

PUFTA.  PEDP argues that under the plain language of the PUFTA, which defines "Asset" as

"Property of a debtor" and defines "Property" as "Anything that may be the subject of ownership," *see* 12 Pa.C.S. § 5101(b), and that "Ownership" is defined by its "common and approved usage" by the Black's Law Dictionary as "the right to possess a thing," the License was "property" because PEDP had the right to, and in fact did, possess the License.  *See* 1 Pa.C.S. § 1903(a); Black's Law Dictionary Pocket Edition (5th ed. 2016).  The Commonwealth disputes this contention, asserting that because the PUFTA defines property as anything "that may be the subject of ownership" and because the License was revocable, conditional, and nontransferable privilege, it could not be the subject of ownership.  This Court agrees with the Commonwealth and the Bankruptcy Courts' decisions.  Although PEDP did possess the License, there is nothing to support PEDP's contention that it had a "right" to possess the License.  *See Arneault v. O'Toole*, 864 F. Supp. 2d 361, 395 (W.D. Pa. 2012) (finding that the plaintiff did "not have a protected property right under state law to engage in the gaming industry, since Pennsylvania law expressly makes the granting of a gaming license a revocable privilege" (citing 58 Pa. Code § 421a.1(a)).

If the text of the PUFTA is unambiguous, as PEDP asserts, there is no need to consider the legislative history.  Nevertheless, PEDP has presented this argument on appeal so it will be addressed.  The legislative history, as reflected in the commentary to the PUFTA, states that "[t]he definition of 'property' is intended to be construed broadly, to include any right or interest that contributes to the value of a person."  *See* 12 Pa.C.S. § 5101, cmt, 9.  Although this language supports PEDP's property claim, this Court agrees with the Bankruptcy Court that the legislative history of the PUFTA does not trump the statutory provisions of the Gaming Act.  *See PEDP V*, 611 B.R. at 72; *see also* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its

spirit.").  The Statutory Construction Act provides that the "object of all interpretation and

construction of statutes is to ascertain and effectuate the intention of the General Assembly.

Every statute shall be construed, if possible, to give effect to all its provisions."  1 Pa.C.S. §

1921(a).  "Whenever a general provision in a statute shall be in conflict with a special provision

in the same or another statute, the two shall be construed, if possible, so that effect may be given

to both. If the conflict between the two provisions is irreconcilable, the special provisions shall

prevail and shall be construed as an exception to the general provision. . . ."  1 Pa.C.S. § 1933;

*Winterberg v. Transp. Ins. Co.*, 72 F.3d 318, 324 (3d Cir. 1995) (holding that if conflicting

provisions of statutes are irreconcilable, the specific provisions shall prevail over general

provisions").  In light of the comments in the PUFTA that "[t]here are few reported cases in any

jurisdiction dealing with fraudulent transfer of property that does not constitute an 'asset' as

defined in this chapter," *see* 12 Pa.C.S. § 5101(2), this Court finds that regardless of whether the

PUFTA is irreconcilable with the Gaming Act, whether the License is property is best

determined under the narrower definitions in the Gaming Act.  PEDP's suggestion that because

the comments of the PUFTA include the words "in particular," it is the more specific statute is

misplaced.  Further, the Gaming Act's purpose is not simply to protect the public, as is evident

upon review.  Because the Gaming Act is the more specific statute, the fact that it may have been

passed later in time is irrelevant.  *See* 1 Pa.C.S. § 1933 (providing that "unless the general

provision shall be enacted later and it shall be the manifest intention of the General Assembly

that such general provision shall prevail").

The Gaming Act provides: "[p]articipation in limited gaming authorized under this part

by any licensee, permittee, registrant or certificate holder shall be deemed a privilege."  4 Pa.C.S.

§ 1102(7).  "Nothing contained in [the Gambling Act] is intended or shall be construed to create

in any person an entitlement to a license."  4 Pa.C.S. § 1327.  Further, "a license . . . granted or renewed pursuant to this part shall not be sold, transferred or assigned to any other person; nor shall a licensee . . . grant a security interest in or lien on the license."  4 Pa.C.S. § 1327.  The Board has the "discretion [to] suspend, revoke or deny renewal of any . . . license."  *Id.* Considering these provisions and for the reasons further explained in the Bankruptcy Court's decision, the License is not property of PEDP.  The Bankruptcy Court's determination that PEDP failed to state a fraudulent transfer claim is affirmed.

      **B.**      **Sovereign immunity bars the fraudulent transfer claims.**

      The Bankruptcy Court found "that, in general, the States have waived their sovereign immunity to suit in fraudulent transfer actions in bankruptcy court."  *PEDP V*, 611 B.R. at 68 (citing *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356 (2006)). The court explained:

> Actions seeking the return of a debtor's fraudulently transferred property or, alternatively, the value of such property, were the types of actions with respect to which States would have contemplated narrowly waiving their sovereign immunity when ratifying the Constitution. This is because such actions implicate the *res* of the bankruptcy estate and were part of the fabric of debtor-creditor law at the time of ratification.

*Id.* at 68 (citing *In re La Paloma Generating, Co.*, 588 B.R. 695, 701 (Bankr. D. Del. 2018); *Zazzali v. Swenson (In re DBSI, Inc.)*, 463 B.R. 709, 719 (Bankr. D. Del. 2012)).

      However, the Bankruptcy Court concluded that the fraudulent transfer claims "at issue in this case do not fall under that waiver, and the Defendants' sovereign immunity serves as a defense to those claims."  *PEDP V*, 611 B.R. at 68.  The court reasoned that, in contrast to *Katz* and *DBSI*, because the License did not constitute the property or an asset of PEDP, it did not fall under the Bankruptcy Court's *in rem* jurisdiction to administer the *res* of the bankruptcy estate. *See id.*  For this reason, the court found that the fraudulent transfer claims "are, in essence, a suit for money damages" and "sovereign immunity serves as a defense to those claims."  *Id.*

PEDP asserts that the Bankruptcy Court correctly concluded that sovereign immunity generally does not bar fraudulent transfer actions.  But the court erred in concluding that the License was not the property of PEDP and, therefore, that sovereign immunity had not been waived.  Conversely, the Commonwealth agrees with the Bankruptcy Court's finding that the License was not the property of PEDP and its conclusion that because the License is not *res* the fraudulent joinder claims seek only a money judgment.  The Commonwealth therefore asserts that the License does not invoke the Court's *in rem* jurisdiction.  The Commonwealth further contends that the narrow exception to state sovereign immunity carved out in *Katz* does not apply to fraudulent transfer claims against a non-creditor, non-claimant.[6]

The Commonwealth's suggestion that it is entitled to sovereign immunity because PEDP's fraudulent transfer claims are asserted against a non-creditor, non-claimant, is rejected for the reasons set forth by the Bankruptcy Court.[7]  *See PEDP V*, 611 B.R. at 67 n.21 (holding that *Katz* "support(s) the conclusion that a fraudulent transfer action against a state actor is ancillary to the bankruptcy court's *in rem* jurisdiction where it seeks recovery of the alleged fraudulent transfer or, alternatively, its value, because that recovery promotes the marshalling of the entirety of the debtor's estate for distribution to creditors, *whether or not the state actor is a creditor itself*" (emphasis added)).  Regardless, because, for the reasons previously stated, the License was not the property of PEDP, the Bankruptcy Court correctly concluded that sovereign

---

[6]     Because the License was not property, there is no need to address the Commonwealth's alternative arguments that: (1) PEDP received reasonably equivalent value for the license transfer, and (2) the fraudulent transfer claims are barred by res judicata.

[7]     Because this Court adopts Judge Coleman's opinion after de novo review, it need not provide further discussion.  *See, e.g. Edge Petroleum Operating Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case)*, 483 F.3d 292, 297 (5th Cir. 2007) ("The district court affirmed the bankruptcy court without separate opinion."); *In re Lucas*, 924 F.2d 597, 599 (6th Cir. 1991) (same).

immunity has not been waived.  *See Torkelsen v. Maggio (In re Guild & Gallery Plus)*, 72 F.3d 1171, 1182 (3d Cir. 1996) (holding that "[p]roceedings affecting the *res* are within the [bankruptcy] court's jurisdiction; proceedings not affecting the *res* are not" (internal citations omitted).

## V.      CONCLUSION

After de novo review, this Court concludes that the Bankruptcy Court correctly determined that PEDP did not have a property interest in the License because the Gaming Act clearly provided that the License was a revocable privilege.  The court's determination that sovereign immunity barred the fraudulent transfer claims and that PEDP failed to state a claim was also correct.  Accordingly, the decision of the Bankruptcy Court dated December 31, 2019, dismissing the Adversary Complaint is affirmed.

An appropriate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge